BARBARA J. SCHUPPE, Plaintiff-Appellee, *v.* SAMUEL C. SCHUPPE, Defendant-Appellant.—SAMUEL C. SCHUPPE, Plaintiff-Appellant, *v.* BARBARA J. SCHUPPE, Defendant-Appellee.

Second District   Nos. 78-322, 78-461 cons.

Opinion filed March 12, 1979.

Mirabella & Kincaid, of Wheaton (John B. Kincaid, of counsel), for appellant.

David S. Cochran, of Downers Grove, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

These two appeals have been consolidated for review by this court. In 78-322 (hereafter the dissolution suit) Samuel Schuppe (Samuel) appeals from a decree rendered by the circuit court of Du Page County which dissolved the marriage of Barbara and Samuel Schuppe. The portions of the decree in dispute concern the support and division of property provisions. In 78-461 (hereafter the partition suit) Samuel appeals the dismissal of his suit to partition the marital residence he owned in joint tenancy with Barbara Schuppe (Barbara).

Barbara and Samuel were married in 1958. Three children were born of this marriage; twins, Ann Marie and Peter, age 16 and Elizabeth, age 11 in 1976 when Barbara filed for divorce alleging mental cruelty on the part of Samuel. Hearings in connection with these proceedings were held on August 15, 16 and 18, 1977; judgment for dissolution of marriage was entered on January 20, 1978. Therefore the provisions of the Illinois Marriage and Dissolution of Marriage Act (hereafter the New Act), effective October 1, 1977 (Ill. Rev. Stat. 1977, ch. 40 *et seq.*) are applicable. See Ill. Rev. Stat. 1977, ch. 40, par. 801(b).

Barbara was awarded custody of the couple's three children. She estimated expenses for herself and the children at $2315 per month, while Samuel estimated them at $1095 per month. The trial court awarded Barbara $1600 unallocated family support per month; said payment was to be reduced by $200 per month upon the graduation from high school of each of the children.

In the dissolution suit, the first issue raised on appeal is whether the amount of the award of unallocated family support is unreasonable and contrary to the manifest weight of the evidence.

Samuel argues that even with two of the children now emancipated (the twins having graduated from high school) the required monthly family support payment of $1200 is over one half (53%) of his net monthly

income of $2250. He also testified that his gross monthly income is $5000; that this figure is reduced by several payroll deductions, including $500 per month in an optional profit sharing plan. Further, the parties stipulated that the "Lester Doctrine" derived from the decision in *Commissioner of Internal Revenue v. Lester* (1961), 366 U.S. 299, 6 L. Ed. 2d 306, 81 S. Ct. 1343, would be applicable to this case to control the tax consequences of an award of unallocated child support and maintenance to Barbara. Thus, the unallocated payment of maintenance and support awarded would be treated as alimony only for income tax purposes. It would be fully deductible to Samuel for income tax purposes and includable in the income of Barbara.

■ The awarding of alimony (now termed maintenance under the new act) is a matter within the sound discretion of the trial court and will not be disturbed unless it amounts to an abuse of discretion or is against the manifest weight of the evidence. (*Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 239 N.E.2d 792.) Considering Samuel's monthly income, with both the required and optional deductions plus the tax benefits he receives, we are of the opinion that the monthly family support award is neither against the manifest weight of the evidence nor an abuse of discretion on the part of the trial court.

Next Samuel contends that the trial court erred in failing to terminate maintenance to Barbara. Section 504(b) of the New Act provides in pertinent part:

> "(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after consideration of all relevant factors, including:
>
> (1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> * * *
>
> (4) the duration of the marriage." Ill. Rev. Stat. 1977, ch. 40, par. 504(b).

Samuel testified that he earns a base salary of $60,000 per year; in 1976 he also received a bonus of $600 in addition to his base salary. Barbara was a registered nurse prior to their marriage but terminated such employment shortly after the marriage. Barbara obtained a bachelors degree in 1977 from George Williams College and is at present enrolled in a masters program for a graduate degree in social work. She plans to

work in private therapy after graduation; her income from such work would range between $8000 and $11000 per year.

Here, the parties have been married for approximately 20 years during which time Samuel has advanced himself in business while Barbara has devoted herself to maintaining a home and raising the couple's children. At present she is obtaining the education needed to return to the job market. Should Barbara obtain the maximum salary indicated for that occupation, her earnings would still be approximately one sixth of Samuel's yearly income. Further, when Elizabeth graduates from high school the monthly support payment drops to $1000 per month.

■ We have examined the cases relied on by Samuel and find them factually distinguishable from the case before us; most involving marriages of short duration or second marriage situations. (See *Volid v. Volid* (1972), 6 Ill. App. 3d 386, 286 N.E.2d 42; *Tan v. Tan* (1972), 3 Ill. App. 3d 671, 279 N.E.2d 486.) The award clearly reflects that the trial court followed the dictates of section 504(b) in awarding permanent maintenance to Barbara. Moreover, should there be a substantial change in the parties' circumstances nothing prevents Samuel or Barbara from petitioning for a modification of the maintenance award. See Ill. Rev. Stat. 1977, ch. 40, par. 510.

Next, Samuel contends that the trial court erred in its disposition of the marital residence. The trial court's order awarded possession of the marital home to Barbara; the house was to remain in joint tenancy until Elizabeth's graduation from high school at which time the house was to be sold and the proceeds divided between parties. Barbara was to make the mortgage payments, pay the real estate taxes and bear the cost of general maintenance until the house is sold. Both parties share the cost of insurance on the house and costs of extraordinary improvements.

Samuel argues that the award of possession of the marital home to Barbara amounts to alimony in gross which may not be awarded where periodic alimony has also been awarded. Under section 18 of the Illinois Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 19) a trial court could award either periodic alimony or alimony in gross but not both. Such an award of the marital home would be only possible where special equities had been pleaded and proved. *Overton v. Overton* (1972), 6 Ill. App. 3d 1086, 287 N.E.2d 47.

■ However, under the New Act no such specific bar exists regarding the disposition of property. Section 503(c) of the New Act provides in pertinent part:

> "(c) In a proceeding for dissolution of marriage * * * the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital

misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children." Ill. Rev. Stat. 1977, ch. 40, par. 503(c).

■ We have previously discussed several of these factors in this opinion and find them applicable here as well. In addition, while Barbara will retain possession of the marital residence for approximately seven years, she is required to make all of the mortgage payments and pay the real estate taxes; we do not feel it is therefore inequitable that under the trial court's order she will also receive a credit for her principal payments when the house is sold. Further, Samuel argues that it is unfair to require him to pay half of the insurance costs and half of the cost of extraordinary expenditures since he has no possessory rights in the premises for the seven years. Far from being unfair, such requirements will aid in insuring the saleability of the home seven years from now. Nor is his argument persuasive that in case of his death during the next seven years Barbara as the surviving joint tenant will own the entire property, for in the case of Barbara's death in that time period, Samuel would receive the same windfall. We hold therefore that the trial court did not err in its disposition of the marital home. See *Gray v. Gray* (1978), 57 Ill. App. 3d 430, 373 N.E.2d 317, decided under the Illinois Divorce Act (Ill. Rev. Stat. 1975, ch. 40 *et seq.*).

Samuel then contends that the trial court erred in awarding Barbara a fifty percent interest in stock solely owned by Samuel. He argues that Barbara has failed to establish special equities in the stock.

■ However, as we pointed out above, the New Act makes no mention of special equities; instead it creates a presumption that all property acquired by either spouse during the marriage is marital property. Such property is to be divided by the trial court in just proportions, considering all relevant factors. (See Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) Further, the presumption is overcome only by a showing that the property was acquired by a method listed in subsection (a) of section 503. Ill. Rev. Stat. 1977, ch. 40, par. 503(a).

■■ Samuel has not contended nor shown that the stock was exempt under section 503(a); therefore the presumption that the stock was marital property applies, and the trial court correctly divided the stock between the parties on that basis.

Therefore, on the basis of the foregoing, we affirm the judgment of the trial court in the dissolution suit.

We now turn to the appeal in the partition suit. Following the entry of the judgment for dissolution of marriage, Samuel brought suit to partition the marital residence which he owned in joint tenancy with Barbara. Barbara filed a motion to dismiss the partition suit, alleging that the suit was barred by the judgment for dissolution of marriage which disposed of the marital residence. The motion to dismiss was granted and Samuel appeals.

The general rule in Illinois is that partition is a matter of right where property is held in joint tenancy or tenancy in common. (*Renwick v. Renwick* (1977), 52 Ill. App. 3d 701, 367 N.E.2d 1009.) Our supreme court has stated that no exception is created to allow the right of partition to yield where a family and children are involved. *Heldt v. Heldt* (1963), 29 Ill. 2d 61, 193 N.E.2d 7.

However, in *Hulslander v. Hulslander* (1977), 55 Ill. App. 3d 981, 371 N.E.2d 652, while recognizing the general rule stated above, the court held that even though either of the parties to the divorce may have initially had the right to partition the premises upon which the marital residence was situated, such right was waived when the parties sought a resolution of their conflicting claims irrespective of any remedy of partition, and that therefore no error occurred in the trial court's failure to partition the premises.

■■ Similarly here, Samuel participated in the dissolution of marriage proceedings and it was only after the trial court had disposed of the property and the judgment for dissolution of marriage had been entered that he sought the remedy of partition. Under the rationale of *Hulslander*, we hold therefore that Samuel has waived his right to partition the marital residence.

Therefore we affirm the order of the trial court in the partition suit.

Affirmed.

GUILD, P. J., and LINDBERG, J., concur.